# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDWIN JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 2:19-CV-01426 |
| | ) | |
| **CITY OF BIRMINGHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1. This is an action for legal and equitable relief to redress unlawful discrimination on the basis of race, retaliation, and hostile work environment against the Plaintiff, Edwin Jones (hereinafter "Plaintiff"), a current employee of the City of Birmingham. This suit is brought to secure the protection of and to redress the deprivation of rights secured by the Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000e, 42 U.S.C. § 1981, as amended and 42 U.S.C. § 1983. Plaintiff requests a trial by jury of all triable issues.

1

## JURISDICTION AND VENUE

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.,* 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1983.

3. Subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1343(a)(3), 42 U.S.C. § 1981, 42 U.S.C. § 1983 and 42 U.S.C. § 2000e, *et. seq*.

4. This action is brought within the State where the unlawful employment practices were committed, making venue proper under 42 U.S.C. 2000e-5(f)(3).

5. Plaintiff's claims are authorized by 28 U.S.C. § § 2201 and 2202 (declaratory judgments), and Fed. R. Civ. P. Rule 57.

6. Plaintiff has satisfied all administrative prerequisites to bringing this claim.

7. Venue is proper in this Honorable Court.

## PARTIES

8. Plaintiff Edwin Jones ("Plaintiff") is an African American male citizen of the United States and of the State of Alabama. He is a resident of this Judicial District and Division.

9. Defendant City of Birmingham ("Defendant" or "City") is a local agency of the State of Alabama. At all times relevant hereto, the Defendant has

engaged in business in Birmingham, Alabama and has been an employer within the meaning of 42 U.S.C. § 2000e(a), Title VII of the 1964 Civil Rights Act and the 1991 amendments thereto.  At all times relevant to this action, the Defendant has maintained and operated a business in Alabama and has fifteen (15) or more employees and is considered an employer for Title VII purposes and the 1991 amendments thereto.

## ADMINISTRATIVE PROCEDURES

10. Plaintiff brings this action for the unlawful employment practices and acts of intentional discrimination and retaliation, and the creation of a hostile work environment that occurred at the City of Birmingham.

11. This action seeks to redress unlawful employment practices resulting from the acts of Defendant, its agents, servants, and employees committed with respect to Plaintiff's employment.

12. Plaintiff timely filed his Charge of Discrimination (420-2019-00782) (*Exhibit A*) against Defendant with the Equal Employment Opportunity Commission (EEOC) on December 13, 2018, which was filed within 180 days of the commission of the unlawful employment practices alleged herein.

13. On May 30, 2019, the U.S. Department of Justice, Civil Rights Division issued to Plaintiff a Notice of Right to Sue (*Exhibit B*) regarding his EEOC Charges. Plaintiff received said Notice on June 3, 2019. (*Exhibits C*).

14. Plaintiff filed suit within ninety (90) days of receipt of his Notice of Right to Sue.

15. All administrative prerequisites for filing suit have been satisfied, and Plaintiff is entitled to bring this action.

## STATEMENT OF FACTS

16. Plaintiff, Edwin Jones, is an African American male.

17. Plaintiff began employment with the Defendant, City of Birmingham, on or around April 3, 2014 as a police officer.

18. Plaintiff has been discriminated against because of his race and retaliated against because of his prior EEOC filing.

19. On July 30, 2015, Plaintiff filed an EEOC charge based on race discrimination and retaliation (EEOC Charge # 420-2015-02163). Following the EEOC investigation of this charge, Plaintiff filed a federal civil complaint against Defendant for race discrimination and retaliation under Title VII. The case ultimately settled before trial on or about July 29, 2019.

20. Further, Defendant is subject to the terms of a Conciliation Agreement resulting from the discrimination of another African American police officer. The

Conciliation Agreement is to be posted for two (2) years from its inception on September 7, 2017 until September 7, 2019. The Conciliation Agreement, to which Defendant represents its compliance, states in part that:

> "Federal law requires that there be no discrimination against any employee or applicant for employment because of the individual's . . . race . . . with respect to hire, demotion, discharge, harassment, job assignment, transfer, or any term, condition, or privilege of employment."

21. On or about September 7, 2018, Sergeant Rebecca Herrera (hereinafter "Herrera"), a Caucasian female, summoned Plaintiff to report to the Internal Affairs Division (hereinafter "IAD") for alleged "double dipping," a phrase used to denote an officer who is on duty for the City who clocks in and is working a side job simultaneously. Herrera stated the City was investigating Plaintiff and other employees for allegedly double dipping.

22. During the meeting with Plaintiff, Herrera stated that Plaintiff's name "stood out to her" on the list of suspected double dipping employees subject to investigation. Herrera is close friends with Lieutenant Julie Quigley-Vining (hereinafter "Quigley-Vining"), a Caucasian female, who was Plaintiff's former supervisor and the subject of Plaintiff's prior discrimination and retaliation EEOC charge and lawsuit.

23. Plaintiff asked Herrera what she meant by her statement that Plaintiff's name "stood out to her" since Plaintiff does not know Herrera. Herrera quickly

5

recanted and stated she didn't mean what she said. This statement was very disturbing to Plaintiff and Plaintiff believes that Herrera made this statement because of her relationship with Quigley-Vining.

24. On October 18, 2018, Plaintiff was notified that he was scheduled for a hearing before the Chief of Police Patrick D. Smith (hereinafter "Chief Smith"), African American male, on October 23, 2018, regarding the alleged double dipping. On October 26, 2018, Plaintiff was notified that Chief Smith had not substantiated the double dipping charge.

25. On October 4, 2018, Plaintiff was dispatched to investigate an accident where a car struck a pedestrian. Once on the scene, Plaintiff conducted a thorough investigation which included speaking with the driver of the car in question, interviewing potential witnesses, and making contact with a nearby store owner to obtain any possible security footage. No one on the scene stated they saw anything, and the store owner stated that his cameras were not in operation.

26. As part of Plaintiff's investigation into the accident, the driver stated to Plaintiff that the pedestrian walked out in front of her and she wasn't able to stop in time before striking him. Plaintiff later learned that the victim had died from the injuries he sustained in the accident. Plaintiff contacted the Coroner's Office for identification of the victim. The Coroner's office replied that they would be back in touch with the Plaintiff because fingerprints were needed to identify the victim.

27. After a few days had passed and Plaintiff had not heard from the Coroner's Office, he contacted the Coroner's Office again to obtain the victim's name.

28. On October 30, 2018, Plaintiff was again summoned to Internal Affairs by Herrera, this time for failing to properly investigate the fatal accident of October 4, 2018. During Plaintiff's discussion with Herrera, she stated that she had received video from the nearby store and that witnesses had stated that the driver was intoxicated. Plaintiff asked Herrera why he wasn't notified that video had been retrieved from the store owner; Plaintiff also informed Herrera that he spoke with the store owner on the night of the accident and inquired into the existence of any video and was informed by the store owner that the camera was not in operation. Plaintiff also informed Herrera that he interviewed the driver, and that she did not smell of alcohol and did not display any indications of being intoxicated.

29. Herrera then asked Plaintiff if he had or was having a personal relationship with the driver. Plaintiff stated he was not. However, Plaintiff was concerned that nearly a month had passed and the investigation lacked valuable evidence that was withheld from him and the victim, thus interfering with his ability to submit a full and proper report. The District Attorney's ability to bring criminal charges if the evidence so warranted was also hampered. Plaintiff was later removed from the investigation and it was given to another officer to complete.

30. Plaintiff spoke with Herrera's Internal Affairs supervisor, Lieutenant David Rockett (hereinafter "Rockett"), a Caucasian male, and requested to have Herrera's investigation transferred to another Internal Affairs investigator because of Herrera's relationship with Quigley-Vining and Herrera's previous investigation of him less than a month ago regarding the double dipping. Rockett stated that he knew about the Herrera/Quigley-Vining relationship, but that he was not going to transfer the investigation.

31. Plaintiff also informed Rockett that he previously made a verbal complaint against Herrera's husband, Sergeant Charlie Newfield. However, Rockett still refused to transfer Plaintiff's case to another investigator. Rockett also stated that he "didn't want to violate his (Plaintiff's) Garrity rights."

32. On or around the date of the events listed above, Deputy Chief Michael Richards told everyone in Tactical (TAC) that he was giving everyone a DIRECT ORDER, "Do not go to the EEOC, Human Resources or the Chief with any complaints!" Richards' comments chilled the Plaintiff.

33. Plaintiff is a top-ranking candidate for promotion to the rank of sergeant. The rules of The Personnel Board of Jefferson County state that a person is disqualified for promotion if they are under investigation, have been investigated, or are the subject of discipline within six (6) months prior to the selection of candidates for promotion.

34. Plaintiff contends that the investigations of him are retaliatory for three reasons: (1) Internal Affairs investigator Herrera's close relationship with Quigley-Vining  (1) it was rare and highly unusual for an officer to be investigated by the same investigator twice in less than a month, especially when the circumstances do not warrant such; and (2) Plaintiff is a top ranking candidate in line for promotion to the rank of sergeant and the Personnel Board of Jefferson County rules state that if a person is under investigation, has been investigated, or is the subject of discipline in the six (6) months prior to the selection of candidates for promotion he is disqualified.

35. The actions of the Plaintiff's supervisors, co-workers and Internal Affairs personnel, namely Herrera and Rockett, of continually subjecting Plaintiff to a hostile work environment, continually subjecting him to meritless investigations, and interfering with his ability to get promoted has caused the Plaintiff financial loss. Defendant's interference caused Plaintiff emotional distress and a contracted quality of life.

36. The Defendant has a habit and/or practice of allowing and condoning discrimination based on race as typified in its Conciliation Agreement, September 8, 2017 and retaliating against its employees.

37. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and

anguish and lost wages as a consequence of Defendant's unlawful conduct.

## COUNT ONE
## PLAINTIFF'S CLAIMS OF RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND 42 U.S.C. § 1981 AGAINST DEFENDANT

38. Plaintiff hereby readopts and realleges paragraphs one (1) through thirty-seven (37).

39. Plaintiff has been discriminated against by Defendant based on his race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

40. On July 30, 2015, Plaintiff filed an EEOC charge based on race discrimination and retaliation (EEOC Charge # 420-2015-02163). Following the EEOC investigation of this charge, Plaintiff filed a federal civil complaint against Defendant for race discrimination and retaliation under Title VII. In the charge and lawsuit, Plaintiff named Lieutenant Julie Quigley-Vining (hereinafter "Quigley-Vining"), a Caucasian female, as a supervisor who was discriminating against Plaintiff because of his race.

41. On or about September 7, 2018, Sergeant Rebecca Herrera (hereinafter "Herrera"), a Caucasian female, summoned Plaintiff to report to the Internal Affairs Division (hereinafter "IAD") for an alleged "double dipping" investigation.

42. On October 30, 2018, Plaintiff was again summoned to Internal Affairs by Herrera, this time for failing to properly investigate a fatal accident.

10

43. Plaintiff was denied the opportunity to amend his report as new evidence came to light as is common practice within the Birmingham Police Department (BPD). Yet, Officer Mason, a Caucasian male, was given an opportunity to amend his report and was not investigated or disciplined for such.

44. Plaintiff spoke with Herrera's Internal Affairs supervisor, Lieutenant David Rockett (hereinafter "Rockett"), a Caucasian male, and requested to have Herrera's investigation transferred to another Internal Affairs investigator. Plaintiff's request was denied and Herrera continued her investigation into Plaintiff, despite Rockett's knowledge of Herrera's and Quigley-Vining's close relationship and Plaintiff's previous race discrimination complaints against Quigley-Vining.

45. Plaintiff has been targeted for investigations because of his race, African-American, and because of his previous race discrimination complaints as an African-American.

46. Plaintiff was subjected to two disciplinary investigations within a month's time and was targeted for such investigations by Sergeant Rebecca Herrera, a white female, who has a close personal relationship with Plaintiff's former supervisor, Quigley-Vining, a white female, and the investigations were allowed to proceed under Herrera by Lieutenant David Rockett, a white male.

47. The actions of the Plaintiff's supervisors, co-workers, and Internal Affairs personnel, namely Herrera and Rockett, of continually subjecting Plaintiff to

a hostile work environment, continually subjecting him to meritless investigations, and interfering with Plaintiff's ability to be promoted to sergeant, which directly affects his pay, has caused the Plaintiff financial loss dating back to when he should have been promoted. Defendant's interference caused Plaintiff emotional distress and a contracted quality of life.

48. The Defendant has a habit and/or practice of allowing and condoning discrimination based on race as typified in its Conciliation Agreement, September 8, 2017 and retaliating against its employees.

49. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

## COUNT TWO
## PLAINTIFF'S CLAIMS OF RETALIATION
## IN VIOLATION OF TITLE VII AGAINST DEFENDANT

50. Plaintiff hereby readopts and realleges paragraphs one (1) through thirty-seven (37).

51. Plaintiff has been subjected to two IAD investigations within a month's time: (1) for allegedly double dipping which was not substantiated and (2) regarding the investigation of a wreck on October 4, 2018. These investigations are retaliation for Plaintiff's previous EEOC complaint and federal lawsuit.

52. Both investigations have been with the same investigating officer, Sgt.

Herrera, who is closely associated with individuals the Plaintiff has previously made complaints about, including Quigley-Vining who Plaintiff made complaints about racial discrimination and retaliation.

53. Plaintiff requested to have his investigation transferred to another investigator, however, Rockett, the IAD supervisor, would not transfer the investigation, despite his admitted knowledge about the relationship between Herrera and Quigley-Vining.

54. During the course of her investigation, Herrera withheld valuable information from Plaintiff about the October 4, 2018 wreck.

55. The actions of the Plaintiff's supervisors, co-workers and Internal Affairs personnel, namely Herrera and Rockett, of continually subjecting the Plaintiff to a hostile work environment, continually subjecting Plaintiff to meritless investigations, and interfering with his ability to be promoted to sergeant, which directly affects his pay, has caused the Plaintiff financial loss dating back to when he should have been promoted. Defendant's interference has caused Plaintiff emotional distress and a contracted quality of life.

56. The Defendant has a habit and/or practice of allowing and condoning discrimination based on race discrimination against its employees.

57. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and

anguish and lost wages as a consequence of Defendant's unlawful conduct.

## COUNT THREE
## PLAINTIFF'S CLAIMS OF HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AGAINST DEFENDANT

58. Plaintiff hereby readopts and realleges paragraphs one (1) through thirty-seven (37).

59. Plaintiff has been subjected to two IAD investigations within a month's time: (1) for allegedly double dipping which was not substantiated and (2) regarding the investigation of a wreck on October 4, 2018. These investigations are discrimination based on Plaintiff's race and in retaliation for Plaintiff's previous EEOC complaint and federal lawsuit.

60. Plaintiff has been targeted for investigations by the same investigating officer, Sgt. Herrera, a white female, who is closely associated with individuals the Plaintiff has previously made race discrimination complaints about, including Sgt. Quigley-Vining, a white female and Plaintiff's former supervisor. These investigations would not have occurred but for Plaintiff's race as an African American and Plaintiff's prior complaints of race discrimination.

61. Plaintiff requested to have his investigations transferred to another investigator, however the Internal Affairs supervisor, Lt. Rockett, a white male, would not transfer the investigation, despite his admitted knowledge about the relationship between Herrera and Quigley-Vining and Plaintiff's previous race

discrimination complaints about Quigley-Vining.

62. During the course of her investigation, Herrera withheld valuable information from Plaintiff about the October 4, 2018 wreck.

63. Deputy Chief Michael Richards openly forbade Plaintiff and his coworkers, (TAC) members, from contacting Human Resources, the Chief, or the EEOC with complaints.

64. The actions of the Plaintiff's supervisors, co-workers and IAD personnel namely Herrera and Rockett continually subjecting Plaintiff to a hostile work environment, continually subjecting Plaintiff to meritless investigations and interfering with his ability to be promoted to sergeant, which directly affects his pay, has caused the Plaintiff financial loss dating back to when he should have been promoted. Defendant's interference caused Plaintiff emotional distress and a contracted quality of life.

65. The Defendant has a habit and/or practice of allowing and condoning discrimination based on race as typified in its Conciliation Agreement, September 8, 2017 and retaliating against its employees.

66. Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional distress, emotional and physical pain and anguish and lost wages as a consequence of Defendant's unlawful conduct.

## **GENERAL PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief after a trial by jury:

A. Grant Plaintiff a declaratory judgment that the practices complained of herein are violative of the provisions of Title VII of the Civil Rights Act of 1964 and the amendments thereto, 42 U.S.C. 2000e, et seq., 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1983;

B. Grant Plaintiff an order enjoining Defendant and all persons acting in concert with Defendant from engaging in discriminatory and retaliatory employment practices;

C. Grant Plaintiff the appropriate amounts of backpay, interest, benefits, damages, pay raises with back pay, and reinstatement to the job position from which he was discriminatorily denied, or in the alternative, front pay;

D. Grant Plaintiff an award of compensatory damages, including but not limited to an award for mental anguish and emotional distress;

E. Award Plaintiff his costs and expenses, including an award of reasonable attorney's fees; and,

F. Award such other relief as may be appropriate.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL CLAIMS TRIABLE.**

                                                  Respectfully Submitted,

>/s/ Scott T. Morro
>Scott T. Morro (ASB-4954-C30M)
>Attorney for Plaintiff
>Morro Law Center, LLC
>P.O. Box 1644
>Gardendale, AL 35071
>Telephone: (205)631-6301
>Fax: (205) 285-8542
>morrolawcenter@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorney(s) of record in this case:

Samantha A. Chandler
City of Birmingham
CITY ATTORNEY'S OFFICE
710 20th Street North
Birmingham, AL  35203
(205) 254-2369
Fredric.fullerton@birminghamal.gov
samantha.chandler@birminghamal.gov

>/s/ *Scott T. Morro*
>Scott T. Morro