# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EDWIN JONES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 2:19-CV-01426 |
| | ) |
| **CITY OF BIRMINGHAM,** | ) |
| | ) |
| **Defendant.** | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Plaintiff in the above-styled matter and files this Response in Opposition to Defendant's Motion for Summary Judgment.

## DISPUTED FACTS

The numbers in this section correspond with the numbers contained in "Section I – Relevant Undisputed Facts" of the Defendant's Memorandum of Law in Support of Motion for Summary Judgment. (Doc. 39)

6. **Disputed –** Plaintiff disputes that he had a "single verbal altercation" with Quigley-Vining. (Doc. 39 ¶ 6). Plaintiff stated that Quigley-Vining "came out of her office and went to cussing me out, calling me all types of names and stuff, and she put her finger in my face and told me that I can't stand you people." (Doc. 40-1 Plaintiff depo. p. 37:8-11) Plaintiff also

stated that he was confronted by Quigley-Vining during his prior EEOC investigation when Quigley-Vining "jumped up out of her seat and turned around and pointed her finger at me again and said that, you didn't speak to me, you disrespect me. You see a superior officer standing here, you're supposed to speak." (*Id*. p. 82:6-10). Plaintiff also stated that he was written up by Quigley-Vining. (*Id*. p. 82:16-18).

12.     **Disputed** – Plaintiff disputes that he was double-dipping. Accusations that Plaintiff was double-dipping were not sustained by Chief Smith. (*Id*. p. 41:11-16; ex. 2, pg. 1).

13.     **Disputed** – Plaintiff disputes that he was double-dipping. Accusations that Plaintiff was double-dipping were not sustained by Chief Smith. (*Id*. p. 41:11-16; ex. 2, pg. 1).

17.     **Disputed** – Plaintiff disputes that there were inconsistencies in his report and disputes that there was anything improper with the way he worked the wreck. (*Id*. p. 44-50). Plaintiff denies having any personal relationship with the driver of the vehicle. (Doc. 28 ¶ 29).

20.     **Disputed** – Plaintiff disputes that he deserved a Letter of Counseling for failing to activate his body worn camera. Plaintiff stated that it was common practice throughout his unit to investigate wrecks without the use of the body worn camera. (Doc. 40-1 Plaintiff depo. p. 60:11-22). Plaintiff

also stated that he was instructed by Lt. Taylor "that he (Lt. Taylor) wasn't going to write (Plaintiff) up nor was he going to write anybody else up because no one was using it." (*Id*. p. 27; 16-18).

21. **Disputed** – Plaintiff disputes that Sgt. Lockett issued the Letter of Counseling as Sgt. Lockett did not investigate Plaintiff for any reason. (*Id*. p. 27-28).

22. **Disputed** - Plaintiff disputes that Sgt. Lockett issued the Letter of Counseling as Sgt. Lockett did not investigate Plaintiff for any reason. (*Id*. p. 27-28).

23. **Disputed** – Plaintiff disputes that Lt. Rockett back-dated the Letter of Counseling for the purpose of reducing the amount of time the letter would be considered in Plaintiff's disciplinary hearing. (*Id*. p. 75-76).

24. **Disputed** - Plaintiff disputes that Sgt. Lockett issued the Letter of Counseling as Sgt. Lockett did not investigate Plaintiff for any reason. (*Id*. p. 27-28).

29. **Disputed** – Plaintiff disputes the Defendant's assertion that no retaliation statements were made to him. Plaintiff stated that when he was called in by Sgt. Herrera for the double-dipping investigation, that Sgt. Herrera stated to Plaintiff that his "name stood out to me." (*Id*. p. 32-33). Plaintiff then confronted Sgt. Herrera about her comment and stated to her

that "I know why my name stood out to you, because I'm the one that sued your best friend, Julie Quigley." (*Id.*)

30. **Disputed** – Plaintiff disputes that there was no one in his Tactical unit or within his chain of command that contributed to the alleged hostile work environment. Plaintiff stated that Deputy Chief Michael Richards "told everyone in TAC that he was giving us a direct order, do not go to the EEOC, Human Resources or the chief with any complaints." (*Id.* p. 84:7-9, 13-23; p. 85:1-9; Doc. 41 Ex. A – Affidavits of Mason, Dorr, Lockett, Trumer, Jackson, Cody, Kelley).

31. **Disputed** – Plaintiff testified that the Letter of Counseling he received affected his promotional opportunities, including affecting the way he was scored for promotional opportunities. (Doc. 40-1 Plaintiff depo. p. 98:6-12).

39. **Disputed –** Plaintiff disputes that Hererra and Vining have only a "professional relationship." Plaintiff testified that Hererra and Vining are "best friends" and that he has observed them "ride in the car together" and "go to lunch and stuff together." (*Id.* p. 39:8-9). Herrera also stated that she and Vining went to dinner together once. (Doc. 40-4 Herrera Depo p. 15:20).

44. **Disputed –** Plaintiff disputes this assertion. Plaintiff was forced to file a federal civil race discrimination lawsuit against the City of

Birmingham which ultimately settled. The City of Birmingham did not remedy the discrimination Plaintiff suffered until Plaintiff filed his lawsuit.

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." Id. At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. See *Pace v. Capobianco,* 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). "A fact is `material' if it might affect the outcome of the suit under the governing law." *BBX Capital v. FDIC*, 956 F.3d 1304, 1314 (11th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over such a fact is `genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *BBX Capital*, 956 F.3d at 1304 (cleaned up)

(quoting Anderson, 477 U.S. at 248). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Essentially, the inquiry is `whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer v. Sw. Airlines Co.,* 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251-52)

## ARGUMENT

**Summary Judgment is due to be denied because a genuine issue of material fact remains for a jury.**

### I.   Plaintiff has established a prima facie case of race discrimination pursuant to Title VII

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e2(a)(1). In cases where the only evidence of discrimination is circumstantial, the court must "analyze the claim under the *McDonnell Douglas* framework, which requires the plaintiff to create an inference of discrimination through her prima facie case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir.2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of race discrimination, the plaintiff must prove that "(1) he belongs to a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his classification more favorably; and (4) he was qualified to do the job." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Although the McDonnell Douglas framework is one way of showing discriminatory intent, is not the only way in a Title VII, § 1981, or ADEA Discrimination claim. See *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.2011). According to the Eleventh Circuit, "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents `a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Lockheed-Martin*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir.2011).

Plaintiff has satisfied the first and last prongs of *McDonnell Douglas* as he is an African American and qualified to do the job of Police Officer, which is undisputed by the Defendant. (Doc. 39, p. 14). Plaintiff has also identified an officer

outside of his protected class, Officer Donald Mason that was treated more favorably than Plaintiff. Officer Mason, a white male, was not investigated and allowed to amend a report he made regarding the investigation of a traffic accident. (Doc. 40-1 Plaintiff depo. p. 63). Plaintiff testified to his first-hand knowledge of the facts surrounding Officer Mason's report and the circumstances surrounding Officer Mason revising the report. (*Id.*). Officer Mason was allowed to amend his wreck investigation report, something Plaintiff was not afforded, and was not investigated or disciplined. (*Id.* 63-67). Further, vital information regarding the wreck was withheld by Herrera from Plaintiff, namely a surveillance video showing the accident. (*Id.* 50-53). This evidence concerning the wreck should have been provided to Plaintiff to allow Plaintiff to conduct a full investigation. (*Id.* p. 63). Plaintiff has also shown that, along with the investigation, he received a Letter of Counseling stemming from the wreck investigation, despite testifying that he was instructed by his supervisor that body-worn cameras did not need to be activated during wreck investigations. (*Id*. p. 27; 16-18).

Thus, Plaintiff has satisfied his burden of stating a prima facie case of race discrimination under Title VII.

### II. Plaintiff has established a prima facie case of retaliation pursuant to Title VII

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he

8

has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a), a plaintiff must show that she (1) engaged in . . . statutorily protected expression; (2) suffered an adverse employment action; and that (3) there is a causal connection between the protected activity and the adverse action. *Johnson v. Booker T. Washington Broadcasting Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000). "If a plaintiff establishes a prima facie case of retaliation and the employer proffers a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Watson v. Kelley Fleet Servs., LLC*, 430 F. App'x 790, 791 (11th Cir. 2011) (citing Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997)).

"In order to constitute an adverse employment action for purposes of establishing a prima facie case under Title VII's anti-retaliation provision, the action must be materially adverse from the standpoint of a reasonable employee, such that it would dissuade a reasonable employee from making a discrimination charge." Williams v. Apalachee Ctr., Inc., 315 F. App'x 798, (11th Cir. 2009) (citing Burlington N. & Santa Fe Ry. Co., 548 U.S. at 57). "Whether an employment action qualifies as adverse depends upon the circumstances of the particular case[] and should be judged from the perspective of a reasonable person in the plaintiff's

position, considering all the circumstances." *Mills v. Cellco P'ship*, 376 F. Supp. 3d 1228, 1244 (N.D. Ala. 2019).

A plaintiff establishes a causal connection by showing that the relevant decisionmaker was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Shannon*, 292 F.3d at 716 (quoting *Gupta*, 212 F.3d at 590). "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001), overruled in part on other grounds by *Crawford*, 529 F.3d 961. A lapse in time of one month between a protected activity and an adverse action is sufficiently close to support a causal connection between the two. See *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

Here, Plaintiff has engaged in a statutorily protected activity, namely the filing of his first EEOC charge and the federal civil lawsuit that followed. Plaintiff has also shown that he suffered an adverse employment action. Plaintiff's first EEOC charge included his former supervisor Lt. Quigley-Vining as someone Plaintiff claimed subjected him to discrimination, retaliation, and a hostile work environment. Plaintiff was then subjected to two Internal Affairs investigations within the same month and by the same investigator who was friends with Lt. Quigley-Vining. (Doc. 40-1 Plaintiff depo. p. 62). Plaintiff also requested that Internal Affairs supervisor

Lt. David Rockett remove Herrera from investigating Plaintiff, but this request was denied. (*Id.* p. 55-56). Lt. Rockett, Herrera, and Quigley-Vining all have a personal relationship with one another. (*Id*. p. 62). Further, it is highly unusual for the same Internal Affairs investigator to investigate the same officer twice within the same month. (*Id.* p. 54). Herrera also withheld vital information from Plaintiff during the second Internal Affairs investigation concerning the wreck.

Moreover, Lt. Rockett issued Plaintiff a Letter of Counseling regarding the second investigation for failing to activate his body-worn camera, which negatively affected Plaintiff's promotional opportunities. (*Id*. p. 95-98). Plaintiff testified that it was common practice throughout his unit to investigate wrecks without the use of the body worn camera. (*Id.* p. 60:11-22). Plaintiff also stated that he was instructed by Lt. Taylor "that he (Lt. Taylor) wasn't going to write (Plaintiff) up nor was he going to write anybody else up because no one was using it." (*Id*. p. 27; 16-18).

All of this occurred during the course of Plaintiff's federal discrimination lawsuit, which stemmed from Plaintiff's first EEOC charge, in which Quigley-Vining was deposed as the subject of Plaintiff's discrimination claims. Additionally, Plaintiff testified that at the outset of the double dipping investigation that Herrera stated that, among the officers identified for potential double dipping, Plaintiff's name "stood out" to her. (*Id*. p. 32-33).

Thus, Plaintiff has shown that he suffered an adverse employment action and that his protected activity and the adverse employment action are not wholly unrelated.

### III. Plaintiff has stated a prima facie case for hostile work environment

The Eleventh Circuit also recognizes a cause of action for a hostile work environment based on retaliation. *Monaghan v. Worldpay US, Inc*., 955 F.3d 855, 862 (11th Cir. 2020). To make out a prima facie case for such a claim, a plaintiff must show (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a but for cause of the harassment; (4) the harassment was such that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (5) a basis exists for holding her employer liable, either directly or vicariously. *Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 929 n.10 (11th Cir. 2014).

It is undisputed that Plaintiff engaged in a protected activity by filing his first EEOC charge and federal civil lawsuit. After filing his EEOC charge and during the course of his federal lawsuit, around the time of the investigations into Plaintiff by Herrera, Plaintiff was with his TAC unit for a SWAT callout. Deputy Chief Michael Richards entered the room and instructed that no one go to the EEOC or HR with complaints. (Doc. 40-1 Plaintiff depo. p. 84; Doc. 41 Ex. A – Affidavits of Mason, Dorr, Lockett, Trumer, Jackson, Cody, Kelley). Specifically, Plaintiff testified that

"he (Richards) came in and he stood right by me (Plaintiff), he was looking at me but he was talking abroad, he was looking right at me, he said, you better not go take your ass to the EEOC, better not take your ass to the chief's office, and you better not take your ass to the human resource. I check the sheets every day, and if I see your names on that sheet, I'm going to take my fingers and shove them so far up your ass you'll be able to see my hand through your mouth." (Doc. 40-1 Plaintiff depo. p. 84-85). Richards directed these harassing comments at the Plaintiff and specifically referenced the EEOC. Richards also threatened the Plaintiff with violence if the Plaintiff were to make a complaint with the EEOC. This type of threat would obviously dissuade a reasonable worker from making or supporting a charge or complaint with the EEOC.

Therefore, Plaintiff has satisfied his burden of stating a prima facie case for hostile work environment.

**WHEREFORE,** for the reasons stated above, and when the evidence is viewed in the light most favorable to the Plaintiff, there are genuine issues of material fact supporting this claim. The Plaintiff prays that this Honorable Court will deny Defendant's Motion for Summary Judgment as to all Counts.

Respectfully submitted,

/s/ Scott T. Morro
Scott Morro (ASB-4954-C30M)

>Attorney for Plaintiff
>Morro Law Center, LLC
>P.O. Box 1644
>Gardendale, AL  35071
>Telephone: (205) 631-6301
>Fax: (205) 285-8042
>morrolawcenter@bellsouth.net

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on Defendant's counsel of record through the CM/ECF system which will send notice to all parties on June 1, 2021.

>/s/ Scott T. Morro
>Scott T. Morro