# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **EDWIN JONES,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) )   Case No. 2:19-CV-01426 |
| **CITY OF BIRMINGHAM,** | ) ) ) |
| **Defendant.** | ) ) ) |

## MEMORANDUM OPINION

Edwin Jones ("Jones") is a black male employed by the City of Birmingham ("Birmingham") as a police officer with the Birmingham Police Department ("the Department"). Jones sues Birmingham for discrimination, retaliation, and creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Birmingham seeks summary judgment on all counts. For the reasons stated within, the Court will **GRANT** Birmingham's motion and **DISMISS** Jones's complaint **with prejudice**.

## STATEMENT OF THE FACTS

<u>The 2015 EEOC Complaint</u>: Jones has worked for the Department since 2014. In 2015, Jones filed a charge of discrimination against Birmingham with the Equal Employment Opportunity Commission ("EEOC"), accusing then-Lieutenant Julie

Quigley-Vining ("Quigley-Vining"), who is white, of race discrimination and retaliation. Jones then filed a federal lawsuit, which settled before going to trial.

<u>First IAD investigation</u>: Three years later, the Department's Internal Affairs Division ("IAD") began investigating Jones and six other officers for alleged "double dipping"—*i.e.,* performing paid work on the side while on the clock for the Department. IAD commanding officer Captain Nashonda Howard ("Howard"), who is black, assigned the investigation to Sergeant Rebecca Herrera, who is white ("Herrera"). Jones says that Herrera is "close friends" with Quigley-Vining—the subject of Jones's 2015 Complaint—and that Herrera told Jones his name "stood out to her" on the list of employees suspected of double dipping.[1] Doc. 28, ¶ 22. The Department did not discipline Jones based on this investigation.

<u>Second IAD investigation</u>: Less than 30 days after the double dipping investigation, IAD began investigating Jones again, this time over his handling of a traffic accident in which a pedestrian died. The Alabama Law Enforcement Agency ("ALEA") had contacted the Department with concerns about inconsistencies in Jones's written incident report. Captain Howard again assigned Herrera to investigate. Herrera told Jones that the nearby store's owner had sent the Department video of the incident and that witnesses had told other officers the driver was intoxicated. This information contradicted Jones's report. Jones countered that the

---

[1] Herrera testified that she and Quigley-Vining have only a professional relationship.

store owner told him that the cameras did not work and that the driver displayed no signs of intoxication when Jones interviewed her. Herrera then asked Jones whether he had a personal relationship with the driver, which Jones denied. Around this time, Jones requested Lieutenant David Rockett ("Rockett"), who is white and led the IAD, to transfer the investigation to another IAD investigator because of Herrera's relationship with Quigley-Vining and the fact that she had recently investigated him for double dipping. IAD denied this request.

Following this second investigation, Jones received a Letter of Counseling for failing to activate his Body Worn Camera while working the accident. Jones says the Letter was unwarranted because few Department officers turn their cameras on when responding to wrecks. The IAD investigation turned up no other evidence of wrongdoing by Jones, and Jones did not face further disciplinary action. But Jones says that, because these two investigations occurred within six months, he did not qualify for a promotion to sergeant, citing the policy of "The Personnel Board of Jefferson County." Doc. 28, ¶ 33. Birmingham disputes this allegation, citing its own promotion procedures that include no such policy.

Around the time of the second investigation, the Department's Deputy Chief Michael Richards advised everyone in the Tactical Unit, including Jones, that they were not to "go to the EEOC, Human Resources, or the Chief with any complaints." Doc. 28, ¶ 32. Jones says he felt personally targeted by this statement. Still, Jones

states that neither Herrera, Quigley-Vining, or Rockett—all of whom Jones claims are friends and are responsible for the alleged race discrimination—ever made any comments referencing his prior EEOC charge or lawsuit. He also admits that no one at the Department subjected him to racist statements, slurs, racially offensive symbols, or made any retaliatory comments. Doc. 40-1, 67:13-78:6.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id*. at 324. Moreover, all evidence must be viewed and inferences drawn in the light most favorable to the nonmoving party. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir.2005). When no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ANALYSIS

Jones raises three claims: race discrimination (Count I), retaliation (Count II), and hostile work environment (Count III). The court addresses each below.

### I.  Count I: Title VII Race Discrimination

Jones alleges that Birmingham discriminated against him based on his race by "targeting" him for "meritless" IAD investigations after his previous lawsuit alleging racial discrimination. Doc. 28, ¶¶ 45, 47. Jones also says that Birmingham denied him the chance to amend his report of the traffic incident, despite giving that chance to a white officer. Jones claims these investigations inhibited his promotion to sergeant.

**A. Applicable Law**: Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e et seq. Courts have established a three-step, burden-shifting test for proving discrimination when the plaintiff lacks direct evidence. While each step is distinct, the plaintiff employee ultimately bears the burden of proving that race was a but-for cause of his termination.

o  *Step 1: Prima facie case*

To establish a prima facie case of race discrimination, the plaintiff must show that: (1) he was a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside

his class more favorably; and (4) he was qualified to do the job. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

- *Step 2: Nondiscriminatory reason*

If the employee establishes a prima facie case, the burden then shifts to the defendant employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003).

- *Step 3: Pretext*

If the employer gives a nondiscriminatory reason, the employee must then offer evidence showing that the employer's stated reason was pretextual. *Id.* Significantly, the employee must prove "both that the reason was false and that discrimination was the real reason" that he was terminated. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). As the Eleventh Circuit has put it, the employee "must meet [the stated reason] head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc). The burden ultimately rests with the plaintiff to show that discrimination was the cause of the bad treatment. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

**B. Application to Jones's Claim:** The parties agree that Jones, who is black, belongs to a protected class and that he was qualified to do his job. They only dispute whether Jones faced an adverse employment action and whether Birmingham treated

similarly situated employees more favorably. Because the court finds that Jones has failed to identify a similarly situated employee, it will not address adverse action.

Jones cannot establish a prima facie case without showing Birmingham treated a similarly situated employee, or "comparator," more favorably. *Earle v. Birmingham Bd. of Educ.*, 843 Fed. Appx 164, 166 (11th Cir. 2021). Jones and his comparator must have (1) engaged in the same conduct or misconduct; (2) been subject to the same employment policy, guidelines, or rules; (3) ordinarily been under the same supervisor; and (4) shared similar disciplinary histories. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1227-28 (11th Cir. 2019). When evaluating discipline for workplace misconduct, the comparator's misconduct must be "nearly identical" to the plaintiff's. *Flowers v. Troup City, Ga. Sch. Dist.*, 803 F.3d 1327, 1340 (11th Cir. 2015).

Jones identifies only one potential comparator: Officer Donald Mason ("Mason"). Doc. 28, ¶ 43; Doc. 39, ¶ 26. Mason, a white male, also investigated a traffic accident but "was given an opportunity to amend his report and was not investigated or disciplined for such." Doc. 28, ¶ 43. But the accident Officer Mason investigated did not involve a fatality; Jones's did. Mason's handling of the incident did not prompt a complaint from a third party like ALEA; Jones's did. And Jones does not even allege whether the two officers were subject to the same policies, under the same supervisors, or had similar disciplinary histories.

Finally, Birmingham did not discipline Jones for the inconsistencies in his report. It disciplined him for failing to activate his body worn camera at the scene of the accident. The facts do not show, and Jones does not allege, whether Mason used his body worn camera as required. So Jones cannot show that Mason engaged in the same "basic conduct or misconduct" for which Birmingham disciplined Jones. *Lewis*, 918 F.3d at 1227. Failing to show this, Jones cannot prove that Mason is a proper comparator or that Birmingham treated Mason more favorably. So Jones's claim of race discrimination fails in the first step, and the court needn't discuss Birmingham's nondiscriminatory explanation (Step 2) or pretext (Step 3).

## II.   Count II: Title VII Retaliation

In Count II, Jones alleges that Birmingham instigated the IAD investigations in retaliation for his prior EEOC claim and lawsuit.

**A. Applicable Law**: To establish a prima facie case of Title VII retaliation, Jones must prove that (1) he engaged in protected expression; (2) he was subjected to an adverse employment action; and (3) the adverse employment action was causally connected to the protected conduct. *Furcron v. Mail Centers Plus*, 843 F.3d 1295, 1310 (11th Cir. 2016). The parties agree that Jones engaged in protected expression when he filed a previous EEOC charge and federal lawsuit against Birmingham. But Birmingham disputes the second and third elements. Because

Jones shows no causal connection between the Letter and his previous EEOC charge and lawsuit (Element 3), the court needn't decide whether the Letter of Counseling constitutes an adverse action (Element 2).

**B. Application to Jones's Claim**: Assuming Jones could show Birmingham subjected him to an adverse action, he must "prove that the protected activity and the negative employment action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998) (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993)). Jones can meet this burden by showing that the person responsible for the action "knew about the protected conduct and [the conduct] was the but-for cause of the adverse action." *Id.*

Jones claims that his 2015 EEOC claim and the 2018 IAD investigations are connected by the personal friendship between Quigley-Vining, against whom Jones filed the EEOC claim, Herrera, who conducted the investigations, and Rockett, who led IAD. But Jones presents no evidence that either Herrera or Rockett knew about his EEOC claim and resulting lawsuit. What's more, neither Herrera nor Rockett started the IAD investigations; Captain Howard did. But Jones does not implicate Howard (who is black). Herrera simply conducted the investigations after Howard assigned them to her. And Rockett's only alleged involvement was denying Jones's request to transfer the traffic investigation to another officer. Finally, Herrera testified that she merely has a professional relationship with Quigley-Vining and that

they've associated outside work "maybe once or twice." Doc. 40-4, 15:11-25. Meanwhile, Jones presents no evidence beyond his own statements that either Rockett, Herrera, or Quigly-Vining have any relationship beyond the professional with each other. And Jones admits that none of these individuals made any retaliatory statements toward him or commented on his prior EEOC claim.[2] In short, Jones offers no evidence that links the IAD investigations to the prior EEOC charge.

So Jones argues that the close temporal proximity between his EEOC charge and lawsuit and the investigations establishes the causal link. It's true that a "very close" temporal proximity of the protected activity and the alleged retaliation can establish causal connection on its own. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). But that proximity is not present here. Jones filed his EEOC claim in July 2015 and the resulting lawsuit in 2016. Doc. 28, Doc. 40-1, 62:18-23. But the first investigation of double dipping did not begin until September 7, 2018, over three years after Jones filed the EEOC claim and two years after the lawsuit. This length of time falls far outside the bounds of "close temporal proximity" in the Eleventh Circuit. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that a three-month period between protected activity and adverse action was not "very close"). So Jones cannot show temporal proximity here. "[I]n

---

[2] Jones says Herrera told him his name "stood out" to her during the double dipping investigation and that she said this because of her friendship with Quigley-Vining. Jones presents no evidence that Herrera said this, does not explain why that comment could be traced to an alleged friendship with Quigley-Vining, and undermines his contention by testifying that no one ever made any retaliatory statements toward him. Doc. 40-1, 32:21-33:13.

the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364. Jones's claim for retaliation thus fails, so the court will dismiss Count II.

### III.   Count III: Title VII Hostile Work Environment

In Count III, Jones alleges that the investigations and the Department's handling of them subjected him to a hostile work environment by interfering with his work quality and his ability to be promoted. In support, Jones alleges the same basic facts as in Counts I and II, adding Deputy Richard's statement to the Tactical Unit that no one should complain to the EEOC.

**A. Applicable Law**: Unlike discrete acts of discrimination, hostile work environment claims address conduct whose "very nature involves repeated conduct," such as "discriminatory intimidation, ridicule, and insult." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). To establish a prima facie case of Title VII hostile work environment, Jones must prove that (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive work environment; and (5) Birmingham is responsible for that environment. *Adams v. Austal*, 754 F.3d 1240, 1248-49 (11th Cir. 2014).

For the fourth element, on which this claim turns, the alleged harassment must be so severe and pervasive that it makes the employee feel threatened or affects his ability to do his job. *Perry v. Rogers*, 627 Fed.Appx. 823, 842 (11th Cir. 2015). To assess whether conduct is severe and pervasive enough, courts consider these factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Adams*, 754 F.3d at 1250-51. The behavior must be both objectively and subjectively abusive. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc).

**B. Application to Jones's Claim**: Birmingham disputes all the elements but the first. Below, the court finds that Jones cannot satisfy the fourth element: pervasiveness and severity. So the court will not address the others.

The Eleventh Circuit has found that far worse conduct is not severe and pervasive. In *Perry v. Rogers*, for instance, three Alabama Alcoholic Beverages Control Board ("ABC") employees brought a hostile work environment action against ABC based on several racial incidents involving co-workers and supervisors. *Perry*, 627 Fed.Appx. at 823-24. According to the record, ABC's attorney, after one employee complained about other employees using the N-word to refer to black people (though that employee hadn't heard the comments herself), said, "I am not

going to say that people here don't go to the dry cleaners and get their white robes out . . . [t]hose are bad people, but you know, what can we do?" (referring to the Ku Klux Klan) *Id.* at 835. That same employee claimed to have seen another employee's car adorned with the Confederate flag. *Id.* Another employee testified to hearing her superiors repeatedly using racial slurs. That employee also pointed to at least two personnel decisions that the court determined would support an inference of discriminatory intent. *Id.* at 841. These employees also cited excessive discipline from supervisors, transfers to other locations and departments, and denial of promotions as being racially motivated and creating a hostile work environment. *Id.*

Despite this evidence, the Eleventh Circuit held that the employees had failed to create a genuine issue of material fact on their hostile work environment claim. *Id.* at 837, 842. It noted that the racist comments were isolated incidents that, while "disgusting," did not meet the threshold for "the type of concentrated harassment necessary to sustain a hostile work environment claim under our precedent." *Id.* at 841. Nor did the employees provide any *objective* evidence that the discipline, transfers, and failure to promote were racially motivated. *Id.* at 836.

Here, Jones concedes that he neither heard anyone at the Department make racist comments nor heard rumors of anyone doing so. He never saw any racist symbols. He presents no evidence that anyone—including Herrera, Quigly-Vining, and Rockett—made any statements that suggested racial animus. Instead, Jones

points to a few discrete acts—two investigations[3], a Letter of Counseling, and his inability to amend an incident report—that he fails to connect to any discriminatory statements or behavior. And even if he did, no reasonable juror would classify those acts as *severe and pervasive* harassment.

Finally, Jones claims to have heard Deputy Richards tell officers not to go to the EEOC with complaints. But this is precisely the kind of "isolated incident" that, without reference to "similar" behavior, cannot satisfy the severe and pervasive element.[4] *Perry*, 627 Fed.Appx. at 836. Having failed to show that the Department's actions qualified as severe and pervasive harassment, Jones's hostile work environment must fail. So the court will dismiss Count III.

## CONCLUSION

For the reasons stated above, Birmingham's motion for summary judgment (Doc. 38) is due to be **GRANTED**. The court will enter a separate order granting the motion and dismissing this case with prejudice.

**DONE** on July 26, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[3] The "double dipping" investigation involved black and white employees, which suggests it was not race-based.
[4] The court notes that the version of this story Jones tells in his briefs varies significantly from the one he told in his deposition, which involves much more colorful language. While the court cannot make credibility determinations, this inconsistency further undermines Jones's assertion that Richards's statement creates an issue of fact for trial.